1  KAREN P. HEWITT
   United States Attorney
2  CHRISTINA M. McCALL
   Assistant U.S. Attorney
3  California State Bar No. 234139
   Federal Office Building
4  880 Front Street, Room 6293
   San Diego, California  92101-8893
5  Telephone: (619) 557-6760

6  Attorneys for Plaintiff
   United States of America

                UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,           )  Criminal Case No. 08CR0266-JAH
                                    )
              Plaintiff,            )  Date:  March 3, 2008
                                    )  Time:  8:30 a.m.
                                    )
                                    )  **UNITED STATES' RESPONSE AND**
                                    )  **OPPOSITION TO DEFENDANT'S**
       v.                           )  **MOTION TO:**
                                    )  **COMPEL DISCOVERY AND**
                                    )  **SUPPRESS STATEMENTS**
                                    )
MARIA TERESA POWELL SALINAS-SANCHEZ,)  **TOGETHER WITH STATEMENT**
                                    )  **OF FACTS, MEMORANDUM OF**
                                    )  **POINTS AND AUTHORITIES AND**
              Defendant             )  **MOTION FOR RECIPROCAL**
                                    )  **DISCOVERY**

    Plaintiff, the UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Christina McCall, Assistant United States Attorney, hereby files its Response and Opposition to Defendant's above-referenced motions. This Response and Opposition is based upon the files and records of the case together with the attached statement of facts and memorandum of points and authorities.

//

//

//

//

**I**

**STATEMENT OF THE CASE**

On January 31, 2008, a federal grand jury in the Southern District of California returned a two-count indictment against Defendant Maria Teresa Powell Salinas-Sanchez ("Defendant"). The Indictment charges Defendant with one count of bringing an illegal alien into the United States for financial gain, in violation of 8 U.S.C. § 1324(a)(2)(B)(ii), and one count of bringing in an illegal alien without presentation, in violation of 8 U.S.C. § 1324(a)(2)(B)(iii). On March 5, 2008, the parties conducted a videotaped deposition of the material witness, who entered his true name. In response to learning the material witness' true name, the same grand jury panel returned a superseding indictment on March 12, 2008, with the exact same charges, but simply clarifying the material witness' name.

On February 14, 2008, Defendant filed the above-captioned motions. The United States files the following response.

**II**

**STATEMENT OF FACTS**

A.  **The Offense Conduct**

On January 15, 2008, at around 12:35 p.m., Defendant drove into the SENTRI lane at the Otay Mesa port of Entry. Defendant was the sole visible occupant of a maroon 2005 Chrysler 300 series sedan bearing Mexican license plates. The Chrysler was registered in Defendant's name. Defendant possessed a SENTRI pass, which she presented to the primary inspector, along with a border crossing card. SENTRI crossers only face a two percent chance of being inspected, a far lower incidence than travelers in other lanes. Defendant said she was bringing nothing back from Mexico and had nothing to declare. The inspector asked Defendant to open the trunk. After the trunk request, the officer noticed Defendant's eyes were bulging. Once the trunk opened, the officer saw a man concealed underneath a blanket. The officer immediately closed the trunk and used his service radio to call for assistance. Another officer arrived and placed Defendant in handcuffs, then drove the vehicle into the secondary lot. A third officer took Defendant into the security office. Officers determined that Defendant lacked criminal history. Inside Defendant's purse, officers found Defendant's valid permanent resident card, which should have replaced her border crossing card. Also inside the purse, officers discovered 26,660

1 pesos.

2     In the secondary inspection area, Officer Ornelas opened the trunk, and the hidden man was able
3 to get out of the trunk. This man, initially identified as Marco Aotonio Gonzalez-Martinez, is a Mexican
4 citizen with no legal right to enter the United States. The man was detained as a material witness. He
5 later stated that his true name is Marco Antonio Morales-Mendoza.

6 **B.    Defendant's Statements**

7     At approximately 2:15 p.m., Customs and Border Protection ("CBP") Officer Michael Pederson
8 advised Defendant of her <u>Miranda</u> rights in Spanish. Defendant stated that she understood her rights,
9 signed a written waiver, and agreed to make a statement. Defendant admitted she was the owner of the
10 Chrysler. Defendant indicated that she lives in Las Vegas, Nevada and visits her children in Tijuana.
11 She said she was staying in Tijuana for about eight days during this trip. Defendant claimed her Chrylser
12 was parked and locked in the garage in her family's house for three days prior to her arrest. Defendant
13 said that her son took the vehicle out of the garage the morning of her arrest, parked the car in front of
14 the family house, and gave Defendant the key.

15     Defendant claimed she drove the Chrysler to the local gas station and left the vehicle and key
16 with an attendant as she went into the mini-mart to buy coffee. Defendant explained the extremely large
17 amount of Mexican currency inside a plastic bag in her purse by stating that she planned to exchange
18 pesos for dollars in San Ysidro. Defendant disclaimed knowledge of the person inside her trunk.

19 **D.    The Material Witness' Statements**

20     Marco Antonio Morales-Mendoza, the material witness, was interviewed in the Spanish
21 language. In his interview, Ramirez admitted that she was born in Mexico and remains a citizen of
22 Mexico. Morales-Mendoza said that he possessed no legal documents to enter or remain in the United
23 States. Morales-Mendoza said that he had paid $3000 to be smuggled into the United States. Morales-
24 Mendoza said he arrived in Tijuana about two weeks before his apprehension and stayed in various
25 homes provided by the smuggler. Morales-Mendoza said that he was ushered into the trunk of the
26 Chrysler from another vehicle. Morales-Mendoza said that he was in the trunk for a short period of time,
27 and that he would not recognize the vehicle or its driver.

28     On March 5, 2008, pursuant to a court order, the parties met for a videotaped deposition of

Morales-Mendoza. During that deposition, Morales-Mendoza said that he was born in Mexico City, is a citizen of Mexico, and has always lived in Mexico. Morales-Mendoza said he was married and has children in Mexico. Morales-Mendoza had no legal permission to enter the United States. Morales-Mendoza said that his cousin made arrangements for him to be illegally smuggled into this country. While Morales-Mendoza was in Mexico City, his cousin phoned during the first week in January and said Morales-Mendoza should start getting ready to cross the border. The cousin told Morales-Mendoza to go to Tijuana and wait at the hotel called El Paso, where the smugglers would contact him. Morales-Mendoza flew from Mexico City to Tijuana the second Sunday of January and checked into hotel El Paso. Shortly after checking in, the smugglers arrived at Morales-Mendoza's hotel door. They used the name of Morales-Mendoza's cousin and asked if he was ready to cross.

These people took Morales-Mendoza to a house in Tijuana, using a sports utility vehicle, in a journey that took 15 to 20 minutes. After arriving at the house, Morales-Mendoza stayed overnight. The day before Defendant's arrest, a man showed up in the morning at the house, and took Morales-Mendoza and another couple of people to a big parking lot. In the parking lot, someone explained how the group would be crossed. The plan was to cross the border at the port of entry, on foot. If the aliens were caught at the border, they were instructed to take a taxi back to the hotel. Morales-Mendoza was captured at the port and held in a processing area until about 5:00 p.m. After being released back to Mexico, Morales-Mendoza took a taxi back to the hotel, as instructed.

Morales-Mendoza spent another night at the hotel. The next day, the smugglers returned for him. This time, there were three people other than Morales-Mendoza in the vehicle with him. They drove Morales-Mendoza around for some time, and told him to crouch down with his hands over his head. Then, the smugglers said, "right now, you're going to get out quickly, quickly." The trunk of the Chrysler was already open when Morales-Mendoza climbed in. Morales-Mendoza did not pay attention to the type of neighborhood when he was instructed to enter the trunk. Morales-Mendoza did not know how to get out of the trunk on his own; he was unaware of any means of opening the trunk from the inside. Morales-Mendoza understood that someone was going to open the trunk to get him out of the vehicle and transport him to Los Angeles, where his cousin would pay $3,000. When the smugglers loaded Morales-Mendoza into the trunk, they told him, "when we're ready, I'll knock on [the trunk] like

1  this." The smuggler placed a blanket over Morales-Mendoza, and it was completely dark inside the
2  trunk.

III

**THE UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS**

**A.    ORDER COMPELLING DISCOVERY IS UNNECESSARY**

<u>No Order is Required; The United States is Complying With Discovery Obligations</u>

The United States has produced 193 pages of discovery as of the filing of this response, as well as a digital video recording Defendant's post-arrest <u>Miranda</u> warnings and the interview with the material witness. The United States has produced approximately eight color photographs, with approximately 20 additional digital color photographs currently being duplicated. The United States has complied and will continue to comply with its discovery obligations under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), the Jenks Act (18 U.S.C. §3500), and Federal Rule of Criminal Procedure 16. Because the United States has complied and will comply with its discovery obligations, an order to compel discovery is unwarranted and the request for such an order should be denied.

**Defendant's Statements**

The United States recognizes its obligation under Rules 16(a)(1)(A) and 16(a)(1)(B) to provide to Defendant the substance of Defendant's oral statements and Defendant's written statements. The United States has produced all of the Defendant's statements that are known to the undersigned Assistant U.S. Attorney at this date. If the United States discovers additional oral or written statements that require disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be promptly provided to Defendant.

**Convictions or Prior Similar Acts**

Defendant has already been provided a copy of her criminal history "rap sheet," which does not reveal any criminal convictions. In advance of trial, the Government will notify defense counsel of any evidence offered under Fed. R. Evid. 404(b).

**Evidence Seized**

The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all

1  evidence seized that is within its possession, custody, or control, and that is either material to the
2  preparation of Defendant's defense, or is intended for use by the United States as evidence during its
3  case-in-chief at trial, or was obtained from or belongs to Defendant.
4      The United States need not, however, produce rebuttal evidence in advance of trial. <u>United</u>
5  <u>States v. Givens</u>, 767 F.2d 574, 583-84 (9th Cir. 1984).
6      **Brady Material**
7      The United States has and will continue to perform its duty under <u>Brady v. Maryland</u>, 373 U.S.
8  83 (1963) to disclose material exculpatory information or evidence favorable to Defendant when such
9  evidence is material to guilt or punishment.
10 The United States recognizes that its obligation under <u>Brady</u> covers not only exculpatory evidence, but
11 also evidence that could be used to impeach witnesses who testify on behalf of the United States. <u>See</u>
12 <u>Giglio v. United States</u>, 405 U.S. 150, 154 (1972); <u>United States v. Bagley</u>, 473 U.S. 667, 676-77 (1985).
13 This obligation also extends to evidence that was not requested by the defense. <u>Bagley</u>, 473 U.S. at 682;
14 <u>United States v. Agurs</u>, 427 U.S. 97, 107-10 (1976). "Evidence is material, and must be disclosed
15 (pursuant to <u>Brady</u>), 'if there is a reasonable probability that, had the evidence been disclosed to the
16 defense, the result of the proceeding would have been different.'" <u>Carriger v. Stewart</u>, 132 F.3d 463, 479
17 (9th Cir. 1997) (<u>en banc</u>). The final determination of materiality is based on the "suppressed evidence
18 considered collectively, not item by item." <u>Kyles v. Whitley</u>, 514 U.S. 419, 436-37 (1995).
19      <u>Brady</u> does not, however, mandate that the United States open all of its files for discovery. <u>See</u>
20 <u>United States v. Henke</u>, 222 F.3d 633, 642-44 (9th Cir. 2000)(<u>per curiam</u>). Under <u>Brady</u>, the United
21 States is not required to provide: (1) neutral, irrelevant, speculative, or inculpatory evidence (<u>see</u> <u>United</u>
22 <u>States v. Smith</u>, 282 F.3d 758, 770 (9th Cir. 2002));
23 (2) evidence available to the Defendant from other sources (<u>see</u> <u>United States v. Bracy</u>, 67 F.3d 1421,
24 1428-29 (9th Cir. 1995)); (3) evidence that Defendant already possesses (<u>see</u> <u>United States v. Mikaelian</u>,
25 168 F.3d 380-389-90 (9th Cir. 1999) <u>amended by</u> 180 F.3d 1091 (9th Cir. 1999)); or (4) evidence that
26 the undersigned Assistant U.S. Attorney could not reasonably be imputed to have knowledge or control
27 over. <u>See</u> <u>United States v. Hanson</u>, 262 F.3d 1217, 1234-35 (11th Cir. 2001). <u>Brady</u> does not require
28 the United States "to create exculpatory evidence that does not exist," <u>United States v. Sukumolahan</u>,

1  610 F.2d 685, 687 (9th Cir. 1980), but only requires that the Government "supply a defendant with
2  exculpatory information of which it is aware." United States v. Flores, 540 F.2d 432, 438 (9th Cir.
3  1976).

### Addresses of Government Witnesses

The United States will provide the names of the witnesses it intends to call at trial. Defendant has already received access to the names of potential witnesses through the discovery sent to his counsel. The United States strongly objects to Defendant's request for witness addresses. None of the cases cited by Defendant, nor any rule of discovery, requires the United States to disclose witness addresses. The United States does not know of any individuals who were witnesses to Defendant's offenses except the law enforcement agents who apprehended him, his sister and the material witnesses. The names of these individuals have already been provided to Defendant.

### Information that May Result in a Lower Sentence

The Government is unaware of any mitigating information in this case that has not already been included in hundreds of pages of discovery.

### Jencks Act Material

The United States has or will comply with the disclosure requirements of the Jencks Act. For purposes of the Jencks Act, a "statement" is (1) a written statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. § 3500(e). Notes of an interview only constitute statements discoverable under the Jencks Act if the statements are adopted by the witness, as when the notes are read back to a witness to see whether or not the government agent correctly understood what the witness was saying. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)). By the same token, rough notes by an agent "are not producible under the Jencks Act due to the incomplete nature of the notes." United States v. Cedano-Arellano, 332 F.3d 568, 571 (9th Cir. 2004).

The United States is not aware of any dispatch tapes containing Jencks Act material in this case.

### B.    UNITED STATES' MOTION FOR RECIPROCAL DISCOVERY

Defendant has invoked Fed. R. Crim. P. 16(a) and the United States has voluntarily complied with the requirements of Rule 16(a). Therefore, provision 16(b) of that rule, requiring reciprocal discovery, is applicable. The United States hereby requests Defendant to permit the United States to inspect, copy, and photograph any and all books, papers, documents, photographs, tangible objects, or make copies of portions thereof, which are within the possession, custody or control of Defendant and which he intends to introduce as evidence in his case-in-chief at trial.

The United States further requests that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, which are in the possession or control of Defendant, which he intends to introduce as evidence-in-chief at the trial or which were prepared by a witness whom Defendant intends to call as a witness. The United States also requests that the court make such orders as it deems necessary under Rule 16(d)(1) and (2) to insure that the United States receives the discovery to which it is entitled.

Federal Rule of Criminal Procedure 26.2 requires the production of prior statements of all witnesses, except Defendant. The time frame established by the rule requires the statement to be provided after the witness has testified, as in the Jencks Act. The United States hereby requests that Defendant be ordered to supply all prior statements of defense witnesses by a reasonable date before trial to be set by the court. This order should include any form these statements are memorialized in, including but not limited to, tape recordings, handwritten or typed notes and/or reports.

### C.    THE STATEMENTS SHOULD NOT BE SUPPRESSED

Defendant moves to suppress all statements made to government officials. Moreover, Defendant requests an evidentiary hearing to establish the facts and aid this Court in deciding this suppression motion.

#### 1.    Defendant's Motion Should be Denied Without a Hearing

Contrary to Defendant's request, the Court should deny the motion to suppress without a hearing. Under Ninth Circuit precedent and Southern District Local Criminal Rule 47.1(g)(1), a defendant is

entitled to an evidentiary hearing on a motion to suppress only when the defendant puts forth, in a declaration, sufficient facts to require a factual finding. United States v. Batiste, 868 F.2d 1089, 1098 (9th Cir. 1989) ("defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer, . . . the district court was not required to hold an evidentiary hearing."). "A hearing will not be held on a defendant's pretrial motion to suppress merely because a defendant wants one. Rather, the defendant must demonstrate that a 'significant disputed factual issue exists such that a hearing is required.'" United States v. Howell, 231 F.3d 615, 621(9th Cir. 2000) (citations omitted).

Here, Defendant has failed to support her allegations with a declaration, in clear opposition to Local Rule 47.1(g). Defendant also fails to provide any factual support that a violation of Miranda occurred. This Court should deny Defendant's motion to suppress the statements she made to officials on the day of his arrest.

### 2.    The Miranda Warnings Effectively Conveyed Defendant's Rights

Defendant was informed of the Miranda rights in her native language. It is difficult to see what is wrong with the prophylactic protections phrased almost identically to those in the Miranda case itself. This warning is not defective. Defendant signed the "waiver of rights" form, and initialed each of the rights that were read to her, before speaking about the offense. Defendant clearly indicated she was willing to have a discussion with the officers.

### 3.    Defendant Knowingly, Voluntarily and Intelligently Waived His Rights

The case agent read the Miranda warnings to Defendant. Defendant signed the waiver form and wrote her initials next to each of the enumerated rights. The environment was free of physical intimidation; Defendant was not handcuffed during the interview, which took place in a well-lit room with two Spanish-speaking agents present and two unlocked doors. The length of detention preceding the post-arrest interview-- two and a half hours-- was well within the six hours deemed presumptively voluntary. All the evidence indicates that Defendant knowingly, voluntarily, and intelligently waived his rights. Her statements should be admitted.

# V

# **CONCLUSION**

For the above stated reasons, the United States respectfully requests that Defendant's motions be denied, except where unopposed, and its reciprocal discovery motion be granted.

DATED: April 3, 2008

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

/s/ ***Christina M. McCall***

CHRISTINA M. McCALL
Assistant U.S. **Attorney**

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Case No. 08CR0266-JAH |
| Plaintiff, | ) | |
| | ) | CERTIFICATE OF SERVICE |
| v. | ) | |
| | ) | |
| MARIA TERESA POWELL SALINAS-SANCHEZ, | ) | |
| | ) | |
| Defendant. | ) | |

**IT IS HEREBY CERTIFIED that:**

I, CHRISTINA M. McCALL, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **RESPONSE AND OPPOSITION** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Jan J. Bejar, Esq.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 3, 2008

                                                      /s/ ***Christina M. McCall***
                                                      CHRISTINA M. McCALL